FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2017

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REFUGIO PALACIOS,<br><br>              Plaintiff,<br><br>       vs.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>              Defendant. | No. 1:15-cv-03132-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

1  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

2  nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

3  party appealing the ALJ's decision generally bears the burden of establishing that

4  it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

5  **FIVE-STEP EVALUATION PROCESS**

6  A claimant must satisfy two conditions to be considered "disabled" within

7  the meaning of the Social Security Act.  First, the claimant must be "unable to

8  engage in any substantial gainful activity by reason of any medically determinable

9  physical or mental impairment which can be expected to result in death or which

10  has lasted or can be expected to last for a continuous period of not less than twelve

11  months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

12  "of such severity that he is not only unable to do his previous work[,] but cannot,

13  considering his age, education, and work experience, engage in any other kind of

14  substantial gainful work which exists in the national economy."  42 U.S.C. §

15  423(d)(2)(A).

16  The Commissioner has established a five-step sequential analysis to

17  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

18  404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

19  work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

20

1    "substantial gainful activity," the Commissioner must find that the claimant is not

2    disabled.  20 C.F.R. § 404.1520(b).

3        If the claimant is not engaged in substantial gainful activity, the analysis

4    proceeds to step two.  At this step, the Commissioner considers the severity of the

5    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

6    from "any impairment or combination of impairments which significantly limits

7    [his or her] physical or mental ability to do basic work activities," the analysis

8    proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

9    does not satisfy this severity threshold, however, the Commissioner must find that

10    the claimant is not disabled.  20 C.F.R. § 404.1520(c).

11        At step three, the Commissioner compares the claimant's impairment to

12    severe impairments recognized by the Commissioner to be so severe as to preclude

13    a person from engaging in substantial gainful activity.  20 C.F.R. §

14    404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15    enumerated impairments, the Commissioner must find the claimant disabled and

16    award benefits.  20 C.F.R. § 404.1520(d).

17        If the severity of the claimant's impairment does not meet or exceed the

18    severity of the enumerated impairments, the Commissioner must pause to assess

19    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20    defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

1    capable of performing other work; and (2) such work "exists in significant

2    numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

3    700 F.3d 386, 389 (9th Cir. 2012).

4                               **ALJ'S FINDINGS**

5              Plaintiff applied for Title II disability insurance benefits on May 13, 2011,

6    alleging a disability onset date of August 31, 2005.  Tr. 181-82.  The application

7    was denied initially, Tr. 85-96, and on reconsideration, Tr. 107-11.  Plaintiff

8    appeared at a hearing before an Administrative Law Judge (ALJ) on August 13,

9    2013.  Tr. 41-71.  On October 25, 2013, the ALJ denied Plaintiff's claim.  Tr. 18-

10   40.

11             At the outset, the ALJ found that Plaintiff met the insured status

12   requirements of the Act with respect to his disability insurance benefit claim

13   through December 31, 2010.  Tr. 26.  At step one, the ALJ found that Plaintiff has

14   not engaged in substantial gainful activity during the period from his alleged onset

15   date of August 31, 2005 through his date last insured of December 31, 2010.  Tr.

16   26.  At step two, the ALJ found Plaintiff has the following severe impairments:

17   degenerative disk disease of the lumbar spine with radiculopathy into the lower left

18   extremity (status/post L4-5 laminotomy and discectomy).  Tr. 26.  At step three,

19   the ALJ found that Plaintiff does not have an impairment or combination of

20

impairments that meets or medically equals a listed impairment.  Tr. 27.  The ALJ

then concluded that Plaintiff has the RFC

> to lift and carry twenty pounds occasionally and ten pounds frequently; to
> stand and/or walk about six hours in an eight-hour workday; and to sit for
> about six hours in the same time period. He can occasionally climb ramps,
> stairs, ladders, rope, or scaffolding. He can frequently balance, kneel, or
> crouch. He can occasionally stoop and crawl. He should avoid concentration
> [sic] exposure to extreme temperatures, excessive vibration, or workplace
> hazards.

Tr. 28.  At step four, the ALJ found that Plaintiff is unable to perform relevant past

work.  Tr. 34.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience and RFC, there are jobs in significant numbers in the

national economy that Plaintiff could perform, such as production assembler,

Cashier II, and hand packager.  Tr. 34-35.  On that basis, the ALJ concluded that

Plaintiff is not disabled as defined in the Social Security Act.  Tr. 36.

On June 3, 2015, the Appeals Council denied review, Tr. 1-3, making the

Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C.

1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability income benefits under Title II of the Social Security Act.  ECF No.

15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and

1    2. Whether the ALJ properly considered Plaintiff's symptom claims.

2 ECF No. 15 at 3.

**DISCUSSION**

**A.  Medical Opinion Evidence**

Plaintiff faults the ALJ for discrediting the medical opinions of Larry Lefors,

M.D.; Micah Heeringa, PT; and Margaret Horger, OTR/L; and for crediting the

opinion of Paul Reiss, M.D.  ECF No. 15 at 4, 8- 9.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's."  *Id*.  "In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

1    *1.  Dr. Lefors*

2    In March 2009, treating physician Dr. Lefors assessed the following

3    limitations: "work restrictions with no bending, lifting, twisting and to sit, stand or

4    move around as needed and tak[e] breaks as needed." Tr. 344.  In August 2013,

5    Dr. Lefors assessed Plaintiff as having the following work related-restrictions: "no

6    repetitive bending, lifting, twisting; sit, standing, moving around as needed; take

7    breaks as needed," and further opined that Plaintiff's work-related restrictions

8    would cause him to miss "4 or more days per month" of work.  Tr. 483.   The ALJ

9    gave "minimal weight to Dr. Lefors' opinions."  Tr. 32.

10    Because Dr. Lefors' opinion was contradicted by Dr. Sims, Tr. 387-415, and

11    Dr. Reiss, Tr. 341, the ALJ was required to give specific and legitimate reasons

12    supported by substantial evidence for affording Dr. Lefors' opinion little weight.

13    First, the ALJ rejected Dr. Lefors' opinion regarding the assessed limitations

14    because "[h]is medical records contain minimal examinations findings concerning

15    the claimant's back impairment."  Tr. 32.  "A medical opinion may be rejected by

16    the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported."

17    *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

18    The ALJ noted that Dr. Lefors' "has repeatedly found a positive left SLR

19    and tenderness to palpitation along the claimant's spine, but, otherwise has no

20    documented musculoskeletal or neurological findings."  Tr. 32 (citing Tr. 416-68;

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 10

474-78).  An SLR or single leg raise test allows the doctor to test for impacted

nerves in the spine, whereas palpitation along the spine indicates general

sensitivity.  Both of these tests are consistent with Plaintiff's alleged impairment,

however, as will be discussed *infra,* the ALJ rejected Plaintiff's positive SLR tests

as inconsistent with negative SLR testing completed after Plaintiff's back surgery.

Second, the ALJ also noted a March 2010 MRI that Dr. Lefors called "significantly

abnormal."  Tr. 32, 447.  However, the ALJ discredited this objective finding

because Plaintiff's MRI findings have not changed significantly since the time he

was able to work.  Third, Dr. Lefors noted that "[o]bjective PCE [physical capacity

evaluation] testing shows significant limitations."  Tr. 447.  As the ALJ noted,

there are no musculoskeletal or neurological findings supporting the extreme

assessed limitations.

Because the ALJ properly discounted the objective medical findings that Dr.

Lefors cited in support of his opined limitations, the record supports the ALJ's

determination that there was insufficient objective evidence to support the opined

limitations.  It is the ALJ's duty to resolve conflicts and ambiguity in the medical

and non-medical evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d

595, 599-600 (9th Cir. 1999).  The Court must uphold the ALJ's decision where

the evidence is susceptible to more than one rational interpretation.  *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Here, the ALJ's opinion that Dr.

1  Lefors' assessed limitations would ordinarily be accompanied by more significant

2  objective medical evidence is supported by the record.  Thus, the Court cannot

3  conclude the ALJ erred in determining that Dr. Lefors' opinion was not credible.

4        Second, the ALJ rejected Dr. Lefors' opinion because "Dr. Lefors appears to

5  have relied primarily on the claimant's subjective reporting of his pain symptoms,"

6  which the ALJ found "to be of limited credibility."  Tr. 32.  A physician's opinion

7  may be rejected if it is based on a Plaintiff's subjective complaints which were

8  properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

9  *Morgan*, 169 F.3d at 604; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Here,

10 Dr. Lefors included reports of Plaintiff's self-reported symptoms in his medical

11 report.  Tr. 482 ("Describe in detail your patient's symptoms (complaints,

12 including pain, numbness, etc.): constant mild ache to back and into left leg and

13 foot")).  Furthermore, given the ALJ's conclusion that Dr. Lefors did not rely on

14 adequate objective medical evidence to form his opinion, he necessarily would

15 have had to rely on subjective symptom testimony to form his opinion.  To the

16 extent Dr. Lefors did rely on Plaintiff's self-reported symptoms to form his

17 opinion, it was not error for the ALJ to reject his opinion on that basis.

18       Third, the ALJ rejected Dr. Lefors' opinions because Plaintiff's "MRI

19 findings have not dramatically worsened since his period of gainful

20 employment[.]"  Tr. 32.  An ALJ may discount a medical opinion that is

inconsistent with a claimant's reported functioning.  *See Morgan*, 169 F.3d at 601-02.  Plaintiff had periodic MRIs throughout his injury.  As discussed at length *infra,* the ALJ reviewed Plaintiff's MRIs and found that they tended to show that his back injury had not significantly worsened after his alleged disability onset.  Plaintiff initially injured his back in 2000, but remained employed until 2005 in a position that required frequent standing and walking and frequently lifting fifteen pounds.  Tr. 29.  In January 2006, Plaintiff underwent back surgery after allegedly exacerbating his back injury in August 2005.  *Id.*  The ALJ found that Plaintiff's condition had not worsened since mid-2005, when he was able to work, because his back surgery corrected the injury.  The ALJ relies on MRI findings to come to this conclusion.  Tr. 29.  The ALJ was unpersuaded by Dr. Lefors' opinions given the importance that Dr. Lefors assigned one of Plaintiff's MRIs.  The discord between Dr. Lefors medical opinion and Plaintiff's reported functioning over time provides a specific and legitimate reason to reject Dr. Lefors' opinion.  *Bayliss*, 427 F.3d at 1216.

Fourth, the ALJ rejected Dr. Lefors' opinion because it was unsupported by the Plaintiff's medical record.  Plaintiff had inconsistent SLR test results which were noted by other physicians in the record.  Tr. 33 (citing Tr. 337-415).  As discussed *infra,* the ALJ noted Plaintiff's bilaterally negative SLR tests shortly after having back surgery in 2006.  Tr. 273.  SLR tests allow a physician to test for

impacted nerves and associated low back pain.  Straight-Leg Test for Evaluating

Low Back Pain-Topic Overview, WebMD, http://www.webmd.com/a-to-z-

guides/tc/straight-leg-test-for-evaluating-low-back-pain-topic-overview.  Dr.

Lefors' reports consistently indicate a positive left SLR.  Tr. 32 (citing Tr. 416-68;

474-78) ("Radicular syndrome left lower ext" is noted in every one of Dr. Lefors'

approximately monthly examination reports).  A positive SLR would tend to

support Plaintiff's symptom claims, but is inconsistent with a negative SLR shortly

after surgery.  During an orthopedic/neurologic/chiropractic exam, Dr. Sims noted

> Straight leg raising test supine is positive at 20 degrees on the right and 50
> degrees on the left. In spite of these findings, when he was checked prior to
> the straight leg raising and hip flexion, he demonstrated a sitting straight leg
> raising test of 90 degrees by voluntarily flexing his hip with the knee
> extended and holding it for 10 seconds in full extension. Basically, he had no
> straight leg raising test that was positive at that time.
> Tr. 382

An ALJ may discredit physicians' opinions that are unsupported by the

record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, because Dr. Lefors' opinion

was controverted by the medical record as a whole, specifically by the negative

SLR test a month after surgery, as noted by Dr. Sims, the ALJ may discredit his

opinions.

1    The Court finds that the ALJ provided specific and legitimate reasons that

2    are supported by substantial evidence to reject Dr. Lefors' opinions.  *Bayliss*, 427

3    F.3d at 1216.

4        *2. Ms. Heeringa*

5        In March 2008, examining physical therapist Micah Heeringa opined that

6    Plaintiff could perform work at a medium exertional level, with the need to stand

7    after 20 minutes of sitting; that he could walk for twelve minutes at a time; and that

8    he should avoid stooping, kneel[ing], crouching and climbing.  Tr. 322-27.  The

9    ALJ assigned Ms. Heeringa's opinion "some weight."  Tr. 32.  The ALJ credited

10   Ms. Heeringa's opinion about Plaintiff's "ability to lift and carry at least twenty

11   pounds occasionally and ten pounds frequently [because it] is supported by his

12   work history and his credible examination findings since his alleged onset date."

13   Tr. 32.  However, the ALJ did not credit "Ms. Heeringa's opinions concerning the

14   claimant's abilities to sustain sitting or walking[.]"  Tr. 32.

15       Because Ms. Heeringa is an "other source," the ALJ was required to identify

16   germane reasons for discounting her opinion.  *Molina*, 674 F.3d at 1108.

17       Frist, the ALJ discounted her opinion because Ms. Heeringa relied heavily

18   on Plaintiff's own symptom testimony, which the ALJ found not to be credible.

19   Tr. 32-33.  If a treating provider's opinions are based "to a large extent" on an

20   applicant's self-reports and not on clinical evidence, and the ALJ finds the

1  applicant not credible, the ALJ may discount the treating provider's opinion.

2  *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Bayliss,* 427

3  F.3d at 1217.  The ALJ discounted "Ms. Heeringa's opinions concerning the

4  claimant's abilities to sustain sitting or walking" because they "were based on the

5  claimant's own display of limited pain tolerance during a physical capacity

6  evaluation."  Tr. 32 (citing Tr. 322).  Ms. Heeringa determined the duration that

7  Plaintiff could perform certain work-related activities (such as stooping, kneeling,

8  walking and lifting) by relying on Plaintiff's reports of when his pain became too

9  great to continue performing those activities.  Tr. 326.  For example, to determine

10  how long Plaintiff could stoop, Ms. Heeringa had Plaintiff perform a task in a

11  stooped position.  *Id.*  Ms. Heeringa noted that "[t]esting was stopped by patient

12  due to a 9/10 pain.  He appeared to be painful."  *Id.*  From this test, Ms. Heeringa

13  determined that Plaintiff "was able to tolerate: 24 minutes of continuous stooping."

14  *Id.*  She performed similar tests to determine Plaintiff's tolerance for other work-

15  related skills.  It is reasonable for the ALJ to determine based on this evidence that

16  Ms. Heeringa's assessment was based to a large extent on Plaintiff's self-reported

17  symptoms.  This is a germane reason to reject the assessed limitations.

18        Second, the ALJ found that Ms. Heeringa's opinion merited less weight

19  because it was inconsistent with Plaintiff's reported functioning.  Tr. 32.  An ALJ

20  may discredit medical opinions that are unsupported by the record as a whole or by

1   objective medical findings.  *Batson*, 359 F.3d at 1195.  Here, Ms. Heeringa's

2   opinion conflicts with Dr. Sims observation that "the claimant was observed to sit

3   for 60 minutes without evidence of discomfort."  Tr. 32 (citing Tr. 415).

4   Furthermore, elsewhere in the record Plaintiff "has otherwise reported walking as a

5   primary form of transportation."  *Id.*  The facts identified by the ALJ conflict with

6   Ms. Heeringa's finding that Plaintiff could only sit for 20 minutes at a time and

7   walk for twelve minutes at a time.  Tr. 325.  This was another germane reason to

8   reject the assessed limitations.

9       *3.  Ms. Horger*

10      In June 2010, examining occupational rehabilitation therapist Margaret

11  Horger assessed various work restrictions based on Plaintiff's performance during

12  a physical capacity evaluation.  Tr. 350-67.  She opined that Plaintiff could work

13  "between the sedentary and light weight handling categories on a reasonably

14  continuous basis."  Tr. 351.  She assessed that Plaintiff required "frequent changes

15  of position" but could stand for "4 hours intermittently throughout an 8-hour day."

16  Tr. 353.  She also opined that Plaintiff could sit for "2 2/3 hours" and walk for "2

17  hours intermittently throughout an 8-hour day."  Tr. 353.  Ms. Horger found that

18  the Plaintiff gave "variable effort" during the testing.  Tr. 351.  The ALJ gave

19  "minimal weight" to Ms. Horger's opinion.  Tr. 33.

20

1    Because Ms. Horger is an "other source," the ALJ must provide germane

2    reasons for discounting her opinion. *Molina*, 674 F.3d at 1108.

3        First, the ALJ afforded Ms. Horger's opinion "minimal weight" because her

4    assessments were based in some part on Plaintiff's performance.  She evaluated

5    Plaintiff's effort during testing as "variable" with "significant symptom focus;"

6    nevertheless, she "treated the claimant's presentation as credible when formulating

7    her opinion."  Tr. 33 (citing Tr. 351-58).  If a treating provider's opinions are based

8    "to a large extent" on an applicant's self-reports and not on clinical evidence, and

9    the ALJ finds the applicant not credible, the ALJ may discount the treating

10   provider's opinion. *Tommasetti,* 533 F.3d at 1041; *see also Bayliss,* 427 F.3d at

11   1217.  Ms. Horger's report noted several indications that Plaintiff's effort was less

12   than optimal, such as "[b]ell-shaped curve on the Jamar hand dynamometer,

13   appropriate bell-shaped curve distribution, 1 of 2 negative rapid exchange grips on

14   the Jamar hand dynamometer, 2 of 12 co-efficients of variation above 14 percent,

15   appropriate heart rate changes, and variable competitive test performance."  Tr.

16   351.  Like Ms. Heeringa, Ms. Horger evaluated how long Plaintiff was able to

17   perform certain work-related activities by relying on Plaintiff's reported pain to

18   determine durational tolerance.  Tr. 355-57.  In regards to Ms. Horger's report, the

19   ALJ noted that Plaintiff "has minimal credibility as to the nature and severity of his

20   symptoms or limitations."  Tr. 33.  Ms. Horger's reliance on Plaintiff's self-

reported symptoms to determine his level of impairment is a germane reason to reject her opinion. *Molina*, 674 F.3d at 1108.

Second, the ALJ discredited Ms. Horger's opinion because it was inconsistent with the medical record. Tr. 32-33. An opinion may be rejected if it is unsupported by the medical record. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195. The ALJ opined that Plaintiff's "other examination findings, his work history, and his more recent reported activities indicate that he can perform work at a greater exertional level than opined by Ms. Horger." Tr. 33. Each of these reasons is addressed at greater length elsewhere in this opinion. However, in short, the ALJ was persuaded by Dr. Sims' finding that Plaintiff had bilaterally negative SLR tests a month after surgery, Tr. 382, that Plaintiff's condition did not deteriorate since he was last able to work, and that Plaintiff reported walking as a primary means of transportation. Tr. 415. All of these findings are inconsistent with the level of impairment that Ms. Horger opined. The ALJ did not err when she afforded Ms. Horger's opinion less deference because she was an "other source" whose opinion contradicted the record. These are germane reasons to reject her opinion.

*4. Dr. Reiss*

In December 2006, Dr. Reiss, an orthopedic surgeon, conducted an Independent Medical Evaluation of Plaintiff. Tr. 341. Dr. Reiss' opinion is not

1  contained in the record; a one paragraph summary of his report is incorporated into

2  a psychologists' report.  Tr. 341, ECF No. 15 at 8.  According to the summary, Dr.

3  Reiss opined that Plaintiff "was capable of working at a medium level with

4  maximal lifting of 50 pounds and 25-50 pounds on a frequent basis," but he noted

5  that excessive bending and stooping should be limited.  Tr. 341.  Dr. Reiss noted

6  that Plaintiff "had a strong subjective sense of disability and multiple

7  nonphysiological signs."  Tr. 341.  The ALJ gave "significant weight" to Dr. Reiss'

8  opinion.  Tr. 31.

9       As noted elsewhere, it is well established that a medical opinion may be

10  rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately

11  supported.  *Bray*, 554 F.3d at 1228.  The reverse holds true as well: an ALJ should

12  ordinarily not rely on medical opinions that are merely summarized in the record.

13  "The more a medical source presents relevant evidence to support an opinion,

14  particularly medical signs and laboratory findings, the more weight we will give

15  that opinion.  The better an explanation a source provides for an opinion, the more

16  weight we will give that opinion."  C.F.R. § 404.1527(c)(3).  Here, the ALJ had

17  little if any information about the examination Dr. Reiss conducted, the results of

18  any testing, which medical records were reviewed, or the subject's complaints

19  upon examination because Dr. Reiss' medical report was not in the record.

20  Instead, the ALJ afforded "significant weight" to a one paragraph summary of Dr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 20

Reiss' findings written by a non-physician.  Tr. 31.  Without Dr. Reiss' report, the ALJ had questionable ability to evaluate the summary of findings.

Here, if error, it is harmless.  A reviewing court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina,* 674 F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski*, 556 U.S. at 409-410.  The Plaintiff alleged that the ALJ's treatment of Dr. Reiss' opinion "was harmful because the ALJ gave greater weight to this opinion, which she did not know the basis of, than to the opinion of Mr. Palacios' treating doctor, Dr. Lefors… ."  ECF No. 15 at 9.  Here, the ALJ relied on four other medical opinions credited in her decision to reach her ultimate disability determination.  Tr. 34 ("Incorporating Dr. Kester's opinion with the opinions of Dr. Reiss, Dr. James, Dr. Sims, and Micah Heeringa as previously stipulated, I find that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; to stand and/or walk about six hours in an eight-hour workday; and to sit for about six hours in the same time period.")  While it may have been error had the ALJ relied solely on a summary of Dr. Reiss' opinion, but here, the ALJ also relied on the opinions of Dr. Kester, Dr. Sims, and Ms. Heeringa, which are more robust.  Tr. 85-91, 387-415, 322-27.

Taken together, these physicians could have supported the ALJ's ultimate determination without Dr. Reiss' opinion, therefore, any error in crediting Dr. Reiss' opinion is harmless.

Plaintiff also alleges that the ALJ's treatment of Dr. Reiss' opinion was harmful because it denied Plaintiff a due process right to a full and fair hearing. ECF No. 15 at 9.  This Court finds that Plaintiff received appropriate due process at the ALJ hearing.  The ALJ's treatment of Dr. Reiss' opinion did not implicate Plaintiff's right to a full and fair hearing.

**B.  Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide clear and convincing reasons for discrediting Plaintiff's symptom claims.  ECF No. 15 at 11-18.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if she gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

5    citations and quotations omitted). "General findings are insufficient; rather, the

6    ALJ must identify what testimony is not credible and what evidence undermines

7    the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas,* 278 F.3d

8    at 958 ("[T]he ALJ must make a credibility determination with findings

9    sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

10   discredit claimant's testimony."). "The clear and convincing [evidence] standard

11   is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759

12   F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

13   F.3d 920, 924 (9th Cir. 2002)).

14       In making an adverse credibility determination, the ALJ may consider, *inter*

15   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16   claimant's testimony or between his testimony and his conduct; (3) the claimant's

17   daily living activities; (4) the claimant's work record; and (5) testimony from

18   physicians or third parties concerning the nature, severity, and effect of the

19   claimant's condition. *Thomas*, 278 F.3d at 958-59.

20

1    This Court finds the ALJ provided specific, clear, and convincing reasons

2    for finding that Plaintiff's statements concerning the intensity, persistence, and

3    limiting effects of his symptoms "are not credible."  Tr. 29.

4    *1. Evidence of Exaggeration and Malingering*

5    As an initial matter, the ALJ found evidence of both exaggeration of

6    symptoms and malingering during evaluations.  Tr. 30.  As noted *supra*, the ALJ

7    must justify a negative credibility finding with clear and convincing reasons only if

8    there is no evidence of malingering.  *See Ghanim*, 763 F.3d at 1163; *Molina*, 674

9    F.3d at 1112; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Lester*, 81

10   F.3d at 834.  Moreover, the tendency to exaggerate is a permissible reason for

11   discounting a Plaintiff's credibility.  *See Tonapetyan*, 242 F.3d at (the ALJ

12   appropriately considered Plaintiff's tendency to exaggerate when assessing

13   Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was

14   uncooperative during cognitive testing but was "much better" when giving reasons

15   for being unable to work.); *see also Thomas,* 278 F.3d at 959 (An ALJ may

16   properly rely on a claimant's efforts to impede accurate testing of a claimant's

17   limitations when finding a claimant less than credible).

18   Here, the ALJ discounted Plaintiff's testimony because at least four

19   physicians suggested that Plaintiff exaggerated his symptoms.  Tr. 30.  The ALJ

20   noted that Plaintiff "consistently displays non-organic findings related to his

alleged pain symptoms, in a manner indicating exaggeration or fabrication of his

symptoms and limitations." Tr. 30. The ALJ considered a statement by treating

physician Dr. Primrose during a December 2005 examination that "it was hard to

get [Plaintiff] to fully cooperate, but once he did there was no obvious weakness."

Tr. 30 (citing Tr. 271). A year later, in December 2006, Dr. Reiss noted that

Plaintiff had "a strong subjective sense of disability and multiple nonphysiologic

signs." Tr. 30 (citing Tr. 341). Next, the ALJ noted that Dr. James also felt that

Plaintiff "had a significant conviction of disability." Tr. 30 (citing Tr. 342-43).

Dr. Sims also questioned Plaintiff's veracity. Tr. 373. Plaintiff alleged that he

could not sit for more than approximately ten minutes, but, Dr. Sims noted that

during his examination Plaintiff had "so far been sitting in this office for the past

60 minutes and shows no evidence of discomfort." Tr. 30 (citing Tr. 373). The

record further supports a finding that Plaintiff demonstrated signs of malingering.

During a physical capacity evaluation Plaintiff was noted to have offered "variable

effort." Tr. 351. During an orthopedic/neurological/chiropractic examination

Plaintiff "displayed two of three positive Waddell signs of non-physiologic

symptoms" with one examiner and with another examiner the Plaintiff "had four of

five positive Waddell signs" indicating a non-organic cause of his back pain.[1]  Tr. 30 (citing Tr. 381, 383).  Dr. Wilson noted that during Plaintiff's orthopedic/neurological/chiropractic examination "while the examinee is expressing pain, there is absolutely no facial grimacing or facial expressions of pain other than the verbal acknowledgement of pain."  Tr. 30 (citing Tr. 383).

Because an ALJ may take into account a Plaintiff's exaggeration of symptoms and interference during an evaluation in assessing credibility, evidence of malingering provides a specific, clear and convincing reason to discredit his testimony.  Based on this finding, the ALJ was not required to further justify the negative credibility finding.  Notwithstanding, the ALJ provided other clear and convincing reasons in support of the credibility determination.

2. *Ability to Work With Impairments*

The ALJ found that Plaintiff's back impairment did not prevent him from working.  Tr. 29.  Working with an impairment supports a conclusion that the

_____

[1] Waddell's signs are a group of inappropriate responses to physical examination and the common feature of this inappropriateness is symptom magnification.  *See* Waddell G., McCulloch J.A., Kummel E., Venner R.M., "Nonorganic Physical Signs in Low-Back Pain," *Spine,* 5(2) 117-125, March/April 1980.

impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

Specifically, the ALJ found that Plaintiff's "back impairment has not prevented work in the past and has not dramatically worsened since this period of employment."  Tr. 29.  The ALJ noted a five-year delay between Plaintiff's reported injury, and the date Plaintiff stopped working.  Tr. 29 (citing Tr. 270).  As the ALJ noted, Plaintiff consistently reported that his back impairment was caused by an on-the-job injury that occurred in September 2000.  Tr. 29 (citing Tr. 270).  But, in August 2005, Plaintiff reported exacerbating his back injury while doing yardwork.  Tr. 340-41.  Plaintiff stopped working in 2005.  Tr. 270.

The ALJ found that the Plaintiff's back impairment had not worsened since the period during which he was employed.  Tr. 29.  As mentioned, Plaintiff was able to work despite his back injury until August 2005 when he allegedly exacerbated the injury.  The ALJ noted that Plaintiff "underwent a L4-5 laminotomy and discectomy" in January 2006, because an "MRI of his lumbar spine [in August 2005] found a small L3-4 disc protrusion in addition to his L4-5 protrusion."  Tr. 29.  The L4-5 disc protrusion was a result of the injury sustained in 2000.  Tr. 339.  The ALJ found, based on a 2006 MRI and Plaintiff's test results from a month after surgery, that Plaintiff's capabilities after surgery were equal to Plaintiff's capabilities before the exacerbation in 2005.  That is, after surgery,

Plaintiff's capabilities were equal to that of his capabilities while he was working. Given that Plaintiff was able to work with his back injury, and his capabilities after surgery were equal to those before surgery, the ALJ determined that Plaintiff was still able to work.

Plaintiff contends that gainful employment since the date of injury alone may not dismantle a Plaintiff's credibility. "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). In this instance, five years of work since the date of injury is not a short period of time so as to fall within the *Lingenfelter* exception. *Id.*

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes*, 881 F.2d at 751. It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). Therefore, the ALJ's determination that the

1    Plaintiff's back condition had not worsened since his last period of employment is

2    a clear and convincing reason to question Plaintiff's credibility.

3        *3. Lack of Objective Medical Evidence*

4        Third, the ALJ found that the objective medical evidence did not support

5    Plaintiff's symptom claims.  Tr. 29.  An ALJ may not discredit a claimant's pain

6    testimony and deny benefits solely because the degree of pain alleged is not

7    supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857

8    (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*,

9    885 F.2d at 601.  However, the medical evidence is a relevant factor in determining

10   the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857;

11   20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[2]

12       Here, the ALJ reviewed the medical evidence and concluded that "[t]he

13   claimant's longitudinal examination findings between his alleged onset date and

14   the date last insured indicate that he retained intact ambulation and uncompromised

15   _____

16   [2] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

17   ruling also provides that the consistency of a claimant's statements with objective

18   medical evidence and other evidence is a factor in evaluating a claimant's

19   symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the

20   time of the ALJ's decision and therefore does not apply in this case.

use of his lower extremities during this period." Tr. 29 (citing Tr. 273, Tr. 320-36). The ALJ cited that "the claimant has displayed only mild limitations in his lumbar range of motion" but remarked that there were "notable inconsistencies" to this finding. Tr. 29 (citing Tr. 320-36). The ALJ noted the finding that "a month after [Plaintiff's] spinal surgery, the claimant displayed normal strength and sensation in his lower extremities, as well as bilaterally negative straight leg raises (SLRs)." Tr. 29 (citing 273). Bilaterally negative straight leg raises tends to show that low back nerve roots are not compressed or irritated. Plaintiff also demonstrated "a normal range of lumbar extension, as well as normal lower extremity strength." Tr. 29 (citing Tr. 320-36). The ALJ interpreted these tests as objective medical evidence that tended to show that after Plaintiff's back surgery Plaintiff had symptoms that were substantially different than what he reported. The ALJ also noted that certain observed behaviors tended to indicate that the Plaintiff's physical abilities would allow him to work. For instance, he "was able to stand for an hour while performing various testing activities." Tr. 29 (referring to Tr. 322-27). And, "[d]uring an independent medical examination in June 2010, the claimant displayed normal gait and fair posture, with symmetric strength and heel and toe walking." Tr. 29 (referring to Tr. 372-86).

1    The ALJ's determination that the medical record did not support Plaintiff's

2  symptom claim is a clear and convincing reason to discredit Plaintiff's symptom

3  testimony.

4    *4. Inconsistent Statements*

5    The ALJ discredited Plaintiff's symptom testimony, noting that Plaintiff "is

6  not credible concerning his lack of familiarity with the English language, in a

7  manner that further detracts from his overall credibility concerning his

8  occupational capacity." Tr. 31.  In making a credibility evaluation, the ALJ may

9  rely on ordinary techniques of credibility evaluation.  *Smolen*, 80 F.3d at 1284.

10  One appropriate consideration is "inconsistencies in the claimant's testimony or

11  between his testimony and his conduct."  *Thomas*, 278 F.3d at 958-59.

12    The ALJ cited four instances to support her conclusion that Plaintiff was

13  inconsistent regarding his ability to speak English.  First, "when asked if he had

14  personally completed the work history report… the claimant initially affirmed that

15  this form was completed with his handwriting. He then recanted this assertion and

16  declared that his friend completed the form on his behalf via his dictation."  Tr. 31

17  (citing Tr. 43-71).  Second, the ALJ took Plaintiff's assertion that he could say

18  "good morning" in English to literally mean that he could only say good morning.

19  Tr. 31 (referring to Tr. 70-71).  The ALJ found this statement to lack credibility

20  without providing reason.  Tr. 31.  Third, the ALJ took Plaintiff's work history in

the United States as an indication that Plaintiff likely spoke more English than reported, without undertaking a finding that Plaintiff's relevant past work required the use of the English language.  Tr. 31.  Fourth, the ALJ noted that Plaintiff required an interpreter during his medical evaluations but "has endorsed to one of his treating physicians that he can speak English."  Tr. 31 (citing Tr. 467).  However, Plaintiff contends that he was consistently accompanied by an interpreter to medical appointments.  ECF No. 15 at 16; *see, e.g.* Tr. 268, 271, 337.

The Court finds insufficient inconsistency among the statements to question the veracity of Plaintiff's testimony regarding his ability to speak English.  This does not amount to a clear and convincing reason to discredit Plaintiff.  However, the error is harmless given the other clear and convincing reasons offered by the ALJ.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

*5. Activities of Daily Living*

Finally, the ALJ found that Plaintiff's daily activities were inconsistent with the severe limitations Plaintiff alleged.  Tr. 31.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an

adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.")  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

The ALJ observed that the Plaintiff's daily activities included walking, shopping, and taking his children to school.  Tr. 31 (citing Tr. 345-46).  He reported that he was independent in his meal preparations, his household chores, his driving, and his laundry.  Tr. 31 (citing Tr. 345-46).  He reported attending weekly religious services and occasional fishing.  Tr. 31.  These activities are inconsistent with Plaintiff's complaints that he is unable to sit, stand, or walk comfortably throughout the day and that he is unable to lift and carry within a light exertional capacity.  Tr. 187-89; 43-71.  Basic cooking, cleaning, shopping and driving demonstrate that Plaintiff is capable of some activity throughout the day without becoming overexerted.  Plaintiff's recreational activities are also inconsistent with his reported disability status.  Plaintiff "affirmed that he sometimes went fishing with his children, that he sometimes took them to local

parks, and that he sometimes went to watch his friends particulate [sic] in soccer games." Tr. 31 (citing Tr. 43-71). "He also declared that he had traveled to Oregon (from the Yakima, Washington area)…to visit a friend." Tr. 31 (citing Tr. 43-71). Fishing, driving, traveling, and attending religious services all require extended periods of sitting without affording the opportunity to stand, walk, or reposition that Plaintiff claims is required by his disability. The evidence of Plaintiff's daily activities in this case may be interpreted more favorably to the Plaintiff, however, such evidence is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Here, Plaintiff's daily activities were reasonably considered by the ALJ to be inconsistent with the Plaintiff's allegations of disabling functional limitations. Even assuming that the ALJ erred in relying on Plaintiff's daily activities, any error is harmless because, as discussed *supra*, the ALJ offered sufficient additional reasons, supported by substantial evidence, for the ultimate adverse credibility finding. *See Carmickle,* 533 F.3d at 1162-63.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED**.

1    2.  Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**

2    The District Court Executive is directed to file this Order, enter

3    **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

4    THE FILE.

5    DATED this 24th day of January, 2017.

6                                       s/*Mary K. Dimke*
                                        MARY K. DIMKE
7                            UNITED STATES MAGISTRATE JUDGE